**FILED**
4/17/2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

KSR

1:25-cr-00207
Judge Franklin U. Valderrama
Magistrate Judge Jeffrey Cole
RANDOM/CAT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. |
| v. | Violations: Title 18, United States Code, Sections 371, 666(a)(1)(B), and 666(a)(2) |
| SCOTT WILLASON, and ISMAIL TERLEMEZ | UNDER SEAL |

## INTRODUCTION

1.      The charges in this Indictment arise from a scheme in which SCOTT WILLASON agreed to pay, and ISMAIL TERLEMEZ agreed to accept, bribes in connection with North Atlantic Treaty Organization ("NATO") contracts.  In exchange for the bribes, TERLEMEZ took acts in favor of WILLASON, and WILLASON's consulting client, regarding potential and actual business WILLASON and his client had before TERLEMEZ's employer, the NATO Support and Procurement Agency ("NSPA").

2.      As part of the scheme: (1) WILLASON provided TERLEMEZ with a stream of benefits, including monetary benefits totaling approximately €115,000, (2) TERLEMEZ took acts favorable to WILLASON's client in connection with a trinitrotoluene ("TNT") contract for the United States Army facilitated by NSPA, and (3) TERLEMEZ used his position at NSPA to steer a company that sought to do business with NSPA to WILLASON for his consulting services.

1

## COUNT ONE

The SPECIAL JUNE 2024 GRAND JURY charges:

3.     At times material to this Indictment:

a.     NATO was a military and political alliance among thirty-two member nations, including the United States.

b.     NSPA was responsible for NATO's acquisition of goods and services.  It issued contracts for purchases on behalf of the alliance and member nations, including the purchase of ammunition.

c.     NATO and NSPA were each organizations that received federal benefits in excess of $10,000 in a relevant one-year period, as defined by Title 18, United States Code, Sections 666(b) and (d)(5).

d.     NSPA organized certain procurement activities into "Support Partnerships."  One Support Partnership was the Ammunition Support Partnership, wherein multiple NATO nations, including the United States, combined to purchase ammunition, including small arms munitions and explosives such as TNT.

e.     Defendant SCOTT WILLASON was a United States citizen who resided in Luxembourg.  WILLASON'S last known United States residence was in Skokie, Illinois.

f.     Company A was a Luxembourgish company started by WILLASON.  Through Company A, WILLASON provided consulting services to contractors that wanted to win business from NSPA and government entities. WILLASON described Company A as his "sole proprietorship."

g.     Defendant ISMAIL TERLEMEZ was a Turkish citizen who resided in Luxembourg.   TERLEMEZ was a NSPA Technical Officer in the Ammunition Support Partnership.   As a Technical Officer, TERLEMEZ was responsible for designing the technical specifications for NSPA contracts, as well as evaluating whether bidders met those specifications.   TERLEMEZ resigned from NSPA in or around July 2020.  As a Technical Officer, TERLEMEZ was an agent of NATO and NSPA, as defined by Title 18, United States Code, Section 666(d)(1).

h.     Company B was a company registered by WILLASON in Poland in or around October 2019.

i.     Company C was an Italian defense company that dealt with the recovery of materials from military ammunition, the remediation of contaminated sites, and the disposal of explosives.

j.     Company D was a Latvian company that manufactured equipment for ammunition production and ammunition, including small arms ammunition.

k.     Individual 1 was the Chief Executive Officer of Company D.

4.     Beginning in or around January 2019, on the high seas or out of the jurisdiction of any particular State or district, and continuing through in or around September 2020,

SCOTT WILLASON and
ISMAIL TERLEMEZ,

defendants herein, did knowingly conspire with each other, and others known and unknown to the grand jury:

3

a.      To corruptly solicit and demand, and to accept and agree to accept from another person things of value for the benefit of TERLEMEZ, an agent of NATO and NSPA, intending that TERLEMEZ be influenced and rewarded in connection with any business, transaction, and series of transactions of NATO and NSPA worth $5,000 or more, namely a NSPA TNT contract for the United States Army and a potential NSPA ammunition contract with Company D, in violation of Title 18, United States Code, Section 666(a)(1)(B); and

b.      To corruptly give, offer, and agree to give things of value for the benefit of TERLEMEZ, with the intent to influence and reward TERLEMEZ, an agent of NATO and NSPA, in connection with any business, transaction, and series of transactions of NATO and NSPA worth $5,000 or more, namely a NSPA TNT contract for the United States Army and a potential NSPA ammunition contract with Company D, in violation of Title 18, United States Code, Section 666(a)(2).

<u>Manner and Means of the Conspiracy</u>

5.      It was part of the conspiracy that WILLASON offered and gave, and TERLEMEZ accepted, a stream of benefits, including but not limited to payments from Company A to TERLEMEZ totaling approximately €115,896.74.

6.      It was further part of the conspiracy that, in return for this stream of benefits, TERLEMEZ, as a NSPA Technical Officer, agreed to and did take acts favorable to WILLASON, as well as WILLASON's consulting client, Company C.

7.      It was further part of the conspiracy that TERLEMEZ steered Company D to WILLASON, so that WILLASON could offer consulting services to Company D for potential contracts with NSPA.

4

8. It was further part of the conspiracy that WILLASON benefitted from TERLEMEZ's acts, including but not limited to payments made by Company C to WILLASON's consulting company, Company A, when Company C won a NSPA TNT contract and received purchase orders from NSPA.

9. It was further part of the conspiracy that WILLASON transferred a portion of such payments made to Company A to his own personal bank accounts.

<u>Overt Acts</u>

10. In furtherance of the conspiracy, and to effectuate its illegal objects, WILLASON, TERLEMEZ, and their co-conspirators committed and caused to be committed one or more overt acts, on the high seas or elsewhere out of the jurisdiction of any particular State or district, including but not limited to the following:

a. On or about January 16, 2019, WILLASON, via Company A, entered into an agreement with Company C, whereby Company A would provide consulting services to help Company C secure NSPA contracts for the purchase of TNT. Under the agreement, Company C agreed to pay Company A: (i) a fixed fee of €500,000.00 for each purchase order issued under any NSPA TNT contract; and (ii) a variable fee based on the amount of TNT in each purchase order.

b. On or about March 25, 2019, TERLEMEZ, along with another Technical Officer, determined that Company C's bid for a NSPA request for proposal ("RFP") to provide TNT to the United States Army was technically compliant with the RFP.

c. On or about March 25, 2019, TERLEMEZ, along with another Technical Officer, determined that the bid of Company C's competitor was technically non-compliant with the RFP.

d. On or about March 26, 2019, TERLEMEZ wrote to United States Army officials and stated: "Please find attached the price proposal for the flake TNT requirement." The price proposal reflected Company C's bid.

e. On or about the dates set forth below, WILLASON received, via Company A's bank account, the following payments from Company C pursuant to the consulting agreement between Company A and Company C:

| Overt Act | Approx. Date | Approx. Amount |
|:---:|:---:|:---:|
| e-1 | 06/11/2019 | €150,000.00 |
| e-2 | 02/12/2020 | €400,000.00 |
| e-3 | 05/22/2020 | €69,000.00 |
| e-4 | 05/26/2020 | €230,628.00 |
| e-5 | 06/29/2020 | €180,200.00 |

f. On or about the dates set forth below, WILLASON transferred money in Company A's bank account to his personal bank accounts:

| Overt Act | Approx. Date | Approx. Amount |
|:---:|:---:|:---:|
| f-1 | 06/11/2019 | €20,000.00 |
| f-2 | 02/13/2020 | €40,000.00 |
| f-3 | 05/25/2020 | €15,000.00 |

6

| f-4 | 05/27/2020 | €70,000.00 |
| f-5 | 06/29/2020 | €34,000.00 |

g.     On or about January 30, 2020, while on official NSPA business in Riga, Latvia, TERLEMEZ met Individual 1 and discussed getting Company D set up to do business with NSPA to supply ammunition, including registering Company D in NSPA's "source file" so that Company D could submit bids for NSPA and Ammunition Support Partnership tenders.  Individual 1 provided TERLEMEZ with some of Company D's prices for typical ammunition products.

h.     On or about February 10, 2020, TERLEMEZ met Individual 1 again, this time in Luxembourg.

i.     On or about February 10, 2020, at that meeting, TERLEMEZ told Individual 1 several times that Individual 1 needed to meet TERLEMEZ's "business partner," WILLASON, and that working together would benefit everyone.

j.     On or about February 10, 2020, an hour after TERLEMEZ's meeting with Individual 1 ended, WILLASON contacted Individual 1 and they met at a different hotel in Luxembourg.

k.     On or about February 10, 2020, at the second meeting, WILLASON told Individual 1 that he could help Individual 1 win NSPA ammunition contracts.

l.      On or about February 10, 2020, at the second meeting, WILLASON stated that he knew how high Company D could raise its prices and still win NSPA contracts.

m.      On or about February 18, 2020, WILLASON sent Individual 1 a draft agreement between Company B and Company D.  The contract stated that, in exchange for Company B's assistance in preparing Company D's bids for NSPA ammunition contracts, Company B would be entitled to fifty percent of "the difference between [Company D's] list prices . . . and the prices . . . set in any winning bid leading to a supply contract."

n.      Between November 2019 and September 2020, WILLASON caused a series of payments to be made from Company A's bank account to TERLEMEZ, on or about the dates set forth below:

| Overt Act | Approx. Date | Approx. Amount |
|:---------:|:------------:|:--------------:|
| n-1 | 11/08/2019 | €6,250.00 |
| n-2 | 11/27/2019 | €15,071.25 |
| n-3 | 02/12/2020 | €5,000.00 |
| n-4 | 03/06/2020 | €7,033.25 |
| n-5 | 03/11/2020 | €6,661.64 |
| n-6 | 07/16/2020 | €5,730.00 |
| n-7 | 07/27/2020 | €19,920.00 |
| n-8 | 07/31/2020 | €5,230.60 |
| n-9 | 08/24/2020 | €15,500.00 |

8

| n-10 | 08/24/2020 | €14,500.00 |
| n-11 | 09/15/2020 | €15,000.00 |

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

The SPECIAL JUNE 2024 GRAND JURY further charges:

1.     The allegations in paragraphs 3 through 10 of Count One are incorporated here.

2.     Beginning in or around January 2019, on the high seas or elsewhere out of the jurisdiction of any particular State or district, and continuing to in or around September 2020,

ISMAIL TERLEMEZ,

defendant herein, did corruptly solicit, accept, and agree to accept from another person things of value for the benefit of TERLEMEZ, an agent of NATO and NSPA, intending for TERLEMEZ to be influenced and rewarded in connection with any business, transaction, or series of transactions of NATO and NSPA worth $5,000 or more, namely a NSPA TNT contract for the United States Army and a potential NSPA ammunition contract with Company D.

In violation of Title 18, United States Code, Section 666(a)(1)(B).

## COUNT THREE

The SPECIAL JUNE 2024 GRAND JURY further charges:

1.     The allegations in paragraphs 3 through 10 of Count One are incorporated here.

2.     Beginning in or around January 2019, on the high seas or elsewhere out of the jurisdiction of any particular State or district, and continuing to in or around September 2020,

SCOTT WILLASON,

defendant herein, did corruptly give, offer, and agree to give things of value to TERLEMEZ, an agent of NATO and NSPA, intending for TERLEMEZ to be influenced and rewarded in connection with any business, transaction, or series of transactions of NATO and NSPA worth $5,000 or more, namely a NSPA TNT contract for the United States Army and a potential NSPA ammunition contract with Company D.

In violation of Title 18, United States Code, Section 666(a)(2).

## FORFEITURE ALLEGATIONS

The SPECIAL JUNE 2024 GRAND JURY alleges:

1.      Counts One through Three of this Indictment are incorporated here for the purpose of alleging forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.      As a result of the offenses charged in Counts One through Three of this Indictment,

SCOTT WILLASON and
ISMAIL TERLEMEZ,

defendants herein, shall forfeit to the United States any and all right, title, and interest they have in any property, real and personal, which constitutes or is derived from proceeds traceable to the offenses in Counts One through Three.

3.      If, as a result of any act or omission by the defendants, any of the forfeitable property described above:

      a.  cannot be located upon the exercise of due diligence;

      b.  has been transferred or sold to, or deposited with, a third party;

      c.  has been placed beyond the jurisdiction of the Court;

      d.  has been substantially diminished in value; or

      e.  has been commingle with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

12

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____

FOREPERSON

OMEED A. ASSEFI
Acting Deputy Assistant Attorney
General

SEAN FARRELL
Chief, New York Office

AMANDA BARNES
IBAD JAFRI
CONOR BRADLEY
ALEXANDER DIAMOND
Trial Attorneys

DAVID CHU
Assistant Chief, New York Office

Antitrust Division
U.S. Department of Justice
New York Office
201 Varick St. Room 1006
New York, NY 10014